UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
PADUCAH DIVISION
CASE NO.: 5:06-CV-00206-TBR

IN RE:

| | |
|---|---|
| LWD, INC., *et. al.*, | CHAPTER 11<br>CASE NO. 03-51021<br>(Jointly Administered)<br><br>**DEBTORS** |
| K&B CAPITAL, LLC | **APPELLANTS** |

v.

| | |
|---|---|
| OFFICIAL UNSECURED CREDITOR'S COMMITTEE<br>OF LWD, INC. | **APPELLEES** |

**MEMORANDUM OPINION**

This matter is before the Court on appeal from the United States Bankruptcy Court for the Western District of Kentucky. K&B Capital, LLC ("K&B"), appeals the Bankruptcy Court's September 26, 2006, Order denying K&B's Motion to Compel Execution and Delivery of Mutual Release and for Entry of Order Holding LWD Creditors' Committee in Contempt (Docket #6). The Appellees, Official Unsecured Creditor's Committee ("Committee"), filed a Brief in response (Docket #10). K&B filed a reply brief (Docket # 11). The matter is now ripe for adjudication. For the following reasons, the Court **AFFIRMS** the judgment of the Bankruptcy Court and **DISMISSES** the appeal.

**BACKGROUND**

This case arises from the bankruptcies of several related companies: LWD, Inc.; LWD Field Services, Inc.; LWD Land Company, Inc.; LWD Equipment, Inc.; LWD Trucking, Inc.; LWD Sanitary Landfill, Inc. (collectively the "LWD Defendants"); and General Environmental Services,

LLC ("GES"). Prior to the bankruptcy filings, most of LWD Inc.'s assets were seized by Bank One, a creditor. K&B then purchased Bank One and began loaning large amounts of money to the LWD Inc. entities to avoid bankruptcy. Because of these loans, the collateral K&B purchased from Bank One diminished in value by the time the bankruptcy proceedings began. The Bankruptcy Court entered an Order (the "Cash Collateral Order") allowing "adequate protection payments" to Debtors of up to $35,000 a week. The Order was to remain in effect until the Bankruptcy Court modified it during the ensuing bankruptcy proceedings.

The LWD Inc. Defendants originally were involved in Chapter 7 bankruptcies, but consented to convert the proceedings to Chapter 11 bankruptcies. These proceedings were ordered to be jointly administered with the Chapter 11 bankruptcy proceedings for GES on September 11, 2003. Under the lead case number for LWD, Inc., a Creditor's Committee was appointed for the joint administration of the bankruptcies.[1]

On January 27, 2004, the Bankruptcy Court ordered the Debtors to sell substantially all their assets pursuant to 11 U.S.C. §363. This Order (the "Final Sale Order") authorized the sale of property "free and clear of all liens, tax lies, claims, and encumbrances." A Term Sheet was drawn up to dictate the terms of the auction and executed by the parties on February 1, 2004. Under the Term Sheet, a bidder's "allowed secured claim and credit bid were fixed and limited (except that the bidder could be reimbursed up to $75,000.00 for certain new advances through the auction sale) to the amounts provided thereunder." The Term Sheet was detailed and purported to govern the

---

[1] K&B contests that the Committee represents all Defendants because it was solely filed under the lead case number for LWD, Inc. However, as the Court previously held in a related appeal, it is permissible to appoint a joint committee in this case, the Bankruptcy Court clearly intended the joint appointment of a committee, and it was impossible under the filing system to notice for the appointment of separate committees under the other case numbers.

entirety of issues surrounding the auction and required disclosure of all asset transfers of the Debtors before the sale. Paragraph 9 of the Term Sheet stated each party agreed to grant

> mutual limited releases as to any issues concerning the amount, extent and validity of KB's secured claim, right to credit bid, and treatment as secured creditor as detailed more particularly in the Creditors' Committee's pre-trial memorandum. The foregoing release shall not constitute a general release as to any and all claims, if any, between KB and the Estate, beyond the scope of the foregoing.

The Term Sheet was approved and adopted as the order of the Bankruptcy Court in the February 20, 2004, Agreed Order Resolving Joint Motion to Establish Credit Bid.

On March 9, 2004, K&B successfully bid $2,555,000 for the assets of the Debtors, which included the $1.75 million credit bid allowed under the Term Sheet. The second-highest offer at the sale was a bid by Purchase Area Disposal Services, LLC, for $2.4 million, and the Bankruptcy Court ordered that it could purchase the Debtors' assets if K&B could not successfully complete the transaction. The Bankruptcy Court subsequently approved the sale. On March 24, 2004, the Bankruptcy Court ordered K&B to submit an accounting of funds paid to it by any debtor entity from January 1, 2004, through March 31, 2004.

On June 16, 2004, the Committee filed a Motion claiming that K&B secreted over $476,500 in cash assets of the Debtors prior to the sale which were not disclosed at the auction and that the transfer violated §549 of the Bankruptcy Code. These cash assets were the moneys paid as collateral under the Cash Collateral Order. The Committee also alleged that the Debtors failed to disclose an existing insurance policy, the Closure Insurance Policy, worth hundreds of thousands of dollars in prepaid premiums. The Committee contended that the disclosure of the money and insurance policies would have raised the bid prices at the auction for other bidders, that the transfer of the assets and policies constituted an unfair windfall to K&B, and that K&B's nondisclosure and

possession of these assets deprived the estate of its rightful property. The Bankruptcy Court held an adversary proceeding on this issue on October 24, 2004, and ruled for the Committee on February 10, 2005 (the "Reimbursement Order").[2] The ruling ordered K&B to return $828,875 to the Debtors' estates. The Bankruptcy Court held that the Term Sheet supplanted the terms of the Cash Collateral Order and held that the insurance and cash assets should have been disclosed before the sale pursuant to the Term Sheet. The Bankruptcy Court also denied a Motion to Reconsider its ruling.

K&B then appealed the Bankruptcy Court's ruling. Though the appeal was held to be untimely, this Court ruled on the merits of K&B's claims.[3] The Court found that the Bankruptcy Court properly held a hearing on the Committee's claims and properly found that assets had been improperly secreted against the rules set forth in the Term Sheet, and that K&B was required to return the assets contested by the Committee to the Debtors' estate.

K&B then moved the Court to reconsider its appellate ruling, claiming that this Court did not have subject matter jurisdiction over the appeal and that the Bankruptcy Court's ruling was not an appealable Order. This Court denied K&B's Motion for Reconsideration of its Appeal of the Bankruptcy Court's Reimbursement Order, holding that the Committee did have standing to represent the rights of all Debtors and that the Bankruptcy Court's February 10, 2005 Order was final and appealable.[4]

On August 3, 2006, K&B filed its Motion to Compel Execution and Delivery of Mutual

---

[2] *In re LWD, Inc.*, 332 B.R. 543 (Bankr. W.D. Ky. Feb. 10, 2005).

[3] *In re LWD, Inc.,* 340 B.R. 363 (W.D. Ky. Mar. 15, 2006).

[4] *In re LWD, Inc*., 2007 WL 2668512 (W.D. Ky. Sept. 6, 2007).

4

Release and for Entry of Order Holding LWD Creditors' Committee in Contempt based on the Term Sheet. The Bankruptcy Court entered its Order denying this motion September 26, 2006. K&B now appeals the denial of its motion. Ruling in this matter had been unduly delayed. There was a computer glitch and this matter did not appear on the Court's pending motions docket. It was only discovered recently.

## STANDARD

Bankruptcy Rule 8013 sets forth the standard of review of a bankruptcy courts' judgment, order, or decree. A bankruptcy court's findings of fact may not be set aside unless clearly erroneous, and a bankruptcy court's legal conclusions are reviewed *de novo*. *Budrow v. Montedonico*, 35 Fed. Appx. 213, 215 (6th Cir.2002); *Jordan v. Michigan Conference of Teamsters Welfare Fund*, 207 F.3d 854, 858 (6th Cir.2000); *Stephens Indus., Inc. v. McClung*, 789 F.2d 386, 389 (6th Cir.1986); *Howard v. Allard*, 122 B.R. 696, 698 (W.D.Ky.1991). *De novo* review requires the appellate court to review questions of law independent of a bankruptcy court's determination. *In re Bailey*, 254 B.R.901, 903 (quoting *First Union Mortgage Corp. v. Eubanks (In re Eubanks)*, 219 B.R. 468, 469 (B.A.P. 6th Cir. 1998))(quotations omitted).

"Findings of fact, whether based on oral or documentary evidence, shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the Bankruptcy Court to judge the credibility of witnesses." Fed. R. Bankr. P. 8013. "Under the clearly erroneous standard, as long as the judge's inferences are reasonable and supported by the evidence, they will not be overturned." *In re Southern Indus. Banking Corp.*, 809 F.2d 329, 331 (6th Cir. 1987) (citation omitted). "[F]indings of fact of a bankruptcy court should not be disturbed by the district court judge unless there is 'most cogent evidence of mistake or miscarriage of justice.'" *In re Edward M.*

5

*Johnson and Associates, Inc.*, 845 F.2d 1395, 1401 (6th Cir. 1988).

## DISCUSSION

K&B Capital asserts that the Term Sheet agreed to by the parties on February 1, 2004, was adopted, rather than approved, by the Bankruptcy Court in its Order dated February 20, 2004.  K&B Capital argues that because the Bankruptcy Court's Order states "the Term Sheet shall be and hereby is So Ordered as the Order of this Court," the terms of the Term Sheet became an enforceable court order.   K&B Capital reasons that because the Term Sheet is an enforceable order and its rights under the order have vested, the Bankruptcy Court erred in denying its motion to enforce the Order and Term Sheet.

The Committee asserts, however, that the Term Sheet was an agreement between the parties, approved by the Bankruptcy Court, which is governed by contract law principles.  The Committee reasons that because K&B Capital has not complied with the Term Sheet it may not now seek enforcement of specific provisions of the Term Sheet.  The Committee also argues that enforcement of the Term Sheet can not be compelled since the Bankruptcy Court found that K&B Capital has unclean hands.  The Committee reasons that this finding of fact by the Bankruptcy Court was not clearly erroneous and therefore should not be disturbed by this Court and such finding prevents enforcement of the Term Sheet.

The Bankruptcy Court's February 20, 2004, Order at issue states

> IT IS HEREBY STIPULATED, AGREED, AND ORDERED, that the annexed Term Sheet memorializing the settlement reached between the respective parties in this matter, duly executed by all of the parties by their respective counsel, and which is fully incorporated herein by referenced, (sic) shall be and hereby is Approved in its entirety; and it is further
> ORDERED, that the Term Sheet shall and hereby is So Ordered as the Order of this Court, and the parties shall be and hereby are authorized and directed to take all such actions as necessary and appropriate in furtherance of the terms and provisions provided thereunder . . . .

This language provides that the Term Sheet was both approved and adopted as the order of the Bankruptcy Court. It is a question of law, reviewed *de novo*, whether the order approving and adopting the Term Sheet is an enforceable court order or subject to principles of contract law. The Court finds, although entered as a stipulation[5], the order approving and adopting the Term Sheet is most analogous to a settlement or consent decree governed by contract law.

Black's Law Dictionary defines a settlement as "[a]n agreement ending a dispute or lawsuit." (8th ed. 2004). A settlement agreement is "a type of contract and therefore [is] governed by contract law." *Frear v. P.T.A. Industries, Inc.*, 103 S.W.3d 99, 105 (Ky. 2003). The Second Circuit held, it has often "compared stipulated settlements to contracts, and [it has] consistently applied the law of contract to disputes concerning the construction and enforcement of settlements." *Geller v. Branic Intern. Realty Corp.*, 212 F.3d 734, 737 (2nd Cir. 2000).

In *Williams v. Vukovich*, the Sixth Circuit elaborated on the nature of and process for approving consent decrees. 720 F.2d 909, 920-24 (6th Cir. 1983). The court stated "[a] consent decree is essentially a settlement agreement subject to continued judicial policing. . . . [It] has attributes of both a contract and of a judicial act. On the one hand, a consent decree is a voluntary settlement agreement which could be fully effective without judicial intervention. . . ." *Id.* at 920. On the other hand, "[a] consent decree . . . is also a final judicial order . . . [which] places the power and prestige of the court behind the compromise struck by the parties." *Id.* The Supreme Court explained, "[c]onsent decrees and orders have attributes both of contracts and of judicial decrees. . . . Because of this dual character, consent decrees are treated as contracts for some purposes but

---

[5] The Bankruptcy Court describes in its order "the annexed term sheet executed by the parties . . . which constitutes the stipulation of the parties." Agreed Order Resolving Joint Mot. To Establish Credit Bid, Feb. 20, 2004, 4.

not for others." *U.S. v. ITT Continental Baking Co.*, 420 U.S. 223, 237 n.10 (1975). "[A] consent decree or order is to be construed for enforcement purposes basically as a contract." *Id.* at 238.

Under contract principles, a party seeking specific performance of a contract "must show as a condition precedent to his relief that he has performed or offered to perform everything required of him by the contract, or that he is ready and willing to do that which is required of him upon a compliance on the part of his adversary." *Morton v. Dickson*, 14 S.W. 905 (Ky. 1908). A material breach of a contract excuses the "performance by the other party and precludes an action for damages on the unexecuted part of the contract." *O'Bryan v. Mengel Co.*, 6 S.W.2d 249, 251 (Ky. 1928); *See also In re Terrell*, 892 F.2d 469, 471 (6th Cir. 1989) (failure of either party to complete performance of an executory contract constitutes a material breach excusing the performance of the other). Determination of whether or not a material breach occurred is generally a question of fact. 23 RICHARD A. LORD, WILLISTON ON CONTRACTS § 63:3 (4th ed.).

The Term Sheet, in this case, was "an agreement resolving the issues in connection with the hearing on the credit bid." Agreed Order Resolving Joint Mot. To Establish Credit Bid, Feb. 20, 2004, 4. Like a settlement, this agreement resolved a dispute between the parties. As an agreement, the Term Sheet has attributes of a contract. However, the Term Sheet was both approved and adopted by the Bankruptcy Court giving it attributes of a judicial act, including the power and prestige of the Bankruptcy Court. It is this dual character of the order approving and adopting the Term Sheet which makes it analogous to a consent degree. *See generally MLW Assoc., Inc. v. Certified Tool & Mfg. Corp.*, 106 Fed. App'x 307, 310 (6th Cir. 2004) (the consent judgment entered by the district court ordered the terms and conditions of the agreement be adopted and confirmed as the judgment of the court, however, contract principles were applied when determining

8

enforcement of the agreement).

Applying contract principles to the enforcement of the order approving and adopting the Term Sheet, the Court finds the Bankruptcy Court was correct in denying K&B's motion to enforce. The Bankruptcy Court found that K&B "materially breached the Term Sheet." Order Denying Mot. to Compel Execution and Delivery of Mutual Limited Release, Sept. 26, 2006, 2. This determination is a question of fact which cannot be overturned unless clearly erroneous. The Bankruptcy Court's inferences are reasonable and supported by the evidence. The Bankruptcy Court explained, "[r]ather than following the Term Sheet . . . Debtors improperly transferred assets to KBC and failed to disclose a major asset that was ultimately purchased by KBC for insufficient consideration at the 363 Sale." Order Denying Mot. to Compel Execution and Delivery of Mutual Limited Release, Sept. 26, 2006, 2.

## CONCLUSION

For the foregoing reasons, the Court **AFFIRMS** the judgment of the Bankruptcy Court and **DISMISSES** the appeal.